[No. 1234, August 25, 1909.]

In the Matter of the Voluntary Assignment of CHARLES ZEIGER.

SYLLABUS (BY THE COURT.)

The acts regulating both voluntary and involuntary assignments in this Territory, which were passed by the legislature of 1889, were designed to form a complete code of procedure for parties wishing to abandon their estates to their creditors, and in disposing of property conveyed to them by such assignments, assignees must follow the procedure laid down in said acts.

Appeal from the District Court for Bernalillo County before IRA A. ABBOTT, Associate Justice. Affirmed.

E. W. DOBSON and KLOCK & OWEN, for Appellant.

"The assignee has in general a discretion to sell at public or private sale, as may appear to be most advantageous for the interest of the creditors." North River Bank v. Shumann, 63 How. Pr. R. 476; Halstead. v. Gordon, et al. 34 Barb. Sup. Ct. R. 422; Matter of Leventrett, 40 App. Div. N. Y. Sup. Ct. 429; Hart el al. v. Crane, et al., 7 Paige Ch. R. 37; Sackett v. Mansfield, 26 Ill. 21; Burrill on Assignments, 5 ed., sec. 410, p. 651, and cases cited; pp. 331, sec. 220; Work v. Ellis et al., 50 Bar. Sup. Ct. R. 512. No written authority was required. Borel v. Mead, 3 N. M. 39; Worrall v. Munn, 5 N. Y. 229, 245; Newton v. Bronson, 13 N. Y. 587. The assignee ratified the act of his agent and attorney. Newton v. Bronson, 13 N. Y. 587; Burrill on Assignments, 5 ed., p. 661, sec. 415. It was legal for the assignee to covenant against his own acts. Perry on Trusts, 4 ed., sec. 786, p. 427, vol. 2.

Section 2857, C. L. 1897, is not exclusive and does not prohibit a sale of either real or personal property by an assignee without an order of the court. Chapter 9, Vol. 1, Wagner's Mo. Statutes, 1872, p. 150 et seq.; Jeffries, et al. v. Bleckman, et al. 86 Mo. 350; Goodrich v. Proctor, 1 Gray, Mass. 567; Reymond v. Newcomb, 10 N. M. 151; Bullard v. Lopez, 7 N. M. 561.

In Re Zeiger.

If in granting or refusing an injunction, errors of law are committed by the chancellor, the judgment will be reversed and that, too, although he may be right on the facts.   Campbell v. Seaman, 63 N. Y. 569; Rowley v. Van Benthuysen, 16 Wend. 373; Birge v. Berlin Iron B. Co., 133 N. Y. 447.

When all is fair and the parties deal on equal terms it is a universal rule in equity to enforce contracts for the sale of lands specifically at the demand of either the vendor or vendee, and in such case, it is as much the duty of the court to decree specific performance as to give damage for a breach.   Losee v. Moray, 57 Barb. N. Y. 564; Willard's Equity, p. 280; Story's Equity, secs. 746, 751; 9 Ves. 608; 12 Ves. 395, 400; Seymour v. Delancy, 3 Cow. N. Y. 445; 6 Bosworth 245; Brown v. Half, 5 Paige 235; Phyfe v. Wardell, 5 Paige 268; Crary v. Smith, 2 Comstock, N. Y. Ct. Ap. 60.

A sale by an assignee when not impeached for fraud should not be readily set aside.   Rider v. McGowen, 23 Hun. N. Y. 91.

ALONZO B. McMILLEN for Appellee.

A valid contract of sale could have been made only by order of court.   Laws 1889, Chapter 71; Schofield v. Folsom, 7 N. M. 608; Minn. Co. v. St. Paul Co., 11 Wall. 640; Camden v. Mayhew, 129 U. S. 82; Colclough v. Sterum, 3 Bligh. 181; Lutwiche v. Winford, 2 Bro. C. C. 251; Williamson v. Berry, 8 Howard 548.

A court of equity will not interfere to aid one guilty of fraud or inequitable acts of any kind.   Hennessey v. Woolworth, 128 U. S. 438-442; Marble Company v. Ripley, 10 Wall. 339-359; Holgate v. Eaton, 116 U. S. 33-40; Willard v. Taylor, 8 Wall. 557, 566, 567; McCabe v. Matthews, 155 U. S. 550-553; Cathcart v. Robinson, 5 Pet. 264, 276; 10 Ves. 292, 2 Coxe's Cases in Chancery 77; Pope Mfg. Co. v. Gormully, 144 U. S. 224-236.

## STATEMENT OF FACTS.

This is an appeal taken by George L. Brooks, from a decree of the District Court of Bernalillo County, dis-

solving a temporary writ of injunction issued by the court, restraining F. H. Moore, as assignee of Charles Zeiger, from selling or attempting to sell the south half of lots 13 and 14, Block 8, New Mexico Town Company's Addition to the City of Albuquerque.

It appears that on the 6th day of April, A. D., 1895, Charles Zeiger, executed a deed of assignment for the benefit of his creditors to Wiley M. Weaver, as assignee. Among other things the deed of assignment sets out that the estate and property of the said Zeiger shall be vested in the assignee "in trust, to be administered under and in accordance with the laws of the Territory of New Mexico, regulating voluntary assignments, and not otherwise." Weaver at once accepted the trust, and entered upon the discharge of his duties as assignee. The petition filed by Brooks alleges that on September 1, 1903, Weaver as assignee, sold to Brooks for the Blanchard Meat & Supply Company, the south half of lots 13, and 14, block 8, New Mexico Townsite Addition to Albuquerque, together with some personal property on said lots, for the sum of $2,267.00, and that he paid the sum of $267.00, at the time of the purchase for the personal property, and tendered the remainder of the alleged purchase price, to-wit: $2,000.00 to Weaver, assignee, but that he refused to accept it, giving as a reason that the lots had been sold for delinquent taxes, and that a suit was pending to redeem the same and that the balance of the money remaining due could be paid as soon as the suit was settled. Brooks also alleges that on several occasions he offered to pay the $2,000—if he was given a deed for the property, but that the assignee would not receive the money because the tax suit was not settled. The assignee Weaver, never gave a deed to Brooks for the property in controversy.

The Blanchard Meat & Supply Company entered into the possession of the property at the time of the alleged purchase by Brooks, and it, and its successors, the Western Meat Company, have since occupied a part of the premises and rented the remainder and collected rents therefor. The Blanchard Meat & Supply Company, and the Western Meat Company, also paid taxes on the prop-

erty for the years 1903 to 1907, inclusive, amounting to $338.17, in the aggregate, and repaired the property. It appears on pages 60 and 61 of the record that that part of the property not used by the Blanchard Meat & Supply Company, and its successors, the Western Meat Company, (about one-half of the property), which it rented to a Mr. Tophan, brought in rents up to December 1, 1907, of about $1,275.00.

The judgment settling and adjusting the delinquent taxes, for the non-payment of which the property was sold, was finally determined and entered on November 9, 1905.

On April 21, 1906, the court granted a temporary injunction on the petition of the First National Bank of Albuquerque, and Bessie R. Lesquereus, restraining Weaver from delivering a deed to certain real estate to the Santa Fe Pacific R. R. Co., or from selling or conveying to the Blanchard Meat & Supply Company, the lots in controversy in this suit. What was finally done with this restraining order does not appear in the record now before us.

On March 16, 1907, Weaver resigned as assignee of the Zeiger estate, and on the same day the judge of the District Court of Bernalillo County, appointed Frank H. Moore, as assignee of said estate and said Moore accepted said trust and duly qualified as such assignee.

On September 28, 1907, Moore filed a petition in the District Court of Bernalillo County, in which he prayed for leave to sell at public auction the real estate belonging to the estate of said Zeiger, situated in the County of Bernalillo, and also any personal property belonging to said estate which might come into his hands. Among the real property described in said petition was the south half of lots 13 and 14, block 8, original townsite of Albuquerque, being the lots in controversy in this suit.

On October 1, 1907, the court signed an order allowing Moore as assignee, to sell the real estate and personal property coming into his hands as assignee, at public auction, after first giving public notice of the sale by advertisement.

Publication of the sale seems to have been duly made for on the 4th day of November, 1907, George L. Brooks,

In Re Zeiger.

filed a petition, claiming that he had bought the lots in question as above set out, and asked for a restraining order, enjoining Moore, as assignee, from selling said lots, and that he be directed to execute and deliver to the petitioner (Brooks), a deed to said real estate, and that in the meantime the said Moore as assignee, be enjoined and restrained from selling or attempting to sell said real estate until the further order of the court.

The court granted a temporary restraining order, and evidence was taken before an examiner, who reported the same to the court, together with all the exhibits offered in evidence.

On February 1, 1908, the cause having been heard, the court signed an order dissolving the temporary injunction, and dismissing the petition filed by Brooks. Motion was made to re-open the case, which was denied, and Brooks appealed to this court.

### OPINION OF THE COURT.

MILLS, C. J.—While numerous errors are assigned in this case, we need only consider the point as to whether or not the assignee Weaver, on September 1, 1903, made a valid and binding sale of the lots in question to Brooks for the Blanchard Meat and Supply Company. If he did, then the District Court of Bernalillo County should have continued the injunction against Frank H. Moore, assignee, and should have ordered him to give a deed to the property to the Western Meat Company, the successor in interest of the Blanchard Meat and Supply Company, on that company paying the consideration agreed upon therefor, while on the other hand, if the alleged purchase and sale of the lots was not a valid one, then the court very properly dissolved the injunction and dismissed the petition.

An examination of the deed of assignment executed by Zeiger to Weaver, shows that it contains a provision that: "It is hereby declared the purpose of this assignment that the said estate and property of the said party of the first part shall be vested in the party of the second part in trust to be administered under and in accordance

with the laws of the Territory of New Mexico, regulating assignments and not otherwise."

· Previous to the session of our legislature held in 1889, there were no laws in this Territory regulating assignments of the property of a debtor for the benefit of his creditors, but that legislature passed quite exhaustive acts regulating both voluntary and involuntary assignments. These laws are Chapters 67 and 71, Laws of 1889, and it is under these acts which have been compiled as Sections 2,818 to 2,870, inclusive of the Compiled Laws of 1897, that the assignee was acting.

It is held in Schofield v. Folsom, 7 N. M. 608, that the voluntary assignment act, "was evidently designed by the legislature to form a complete code of procedure for parties wishing to abandon their estates to their creditors."

Section 2857, Compiled Laws of 1897, (which is a part of the voluntary assignment act), provides, that the District Court, or the judge thereof, in vacation, shall make an order for the sale of all the real and personal estate conveyed by any deed of assignment either for cash or upon reasonable credit, and upon such other terms and notice as shall appear to the court or judge to be most advantageous to all the parties in interest, and shall by order direct the nature of the security to be taken at sales made by assignees. The law also required that before any sale of such real estate should be made, the assignee should give bond with at least two good securities to be approved by the court, or the judge thereof, in vacation, in an amount equal to the value of the real estate to be sold, conditioned that the said assignee will faithfully make the sale under such order and duly account for the proceeds thereof.

An examination of the transcript before us, nowhere discloses that the assignee, Weaver, before attempting to sell the real estate in controversy ever applied to the District Court or to the judge thereof in vacation, for an order authorizing him to sell such real estate, nor does it appear that he ever gave the bond required by law to be given before such sale was made. The facts, as nearly as we can gather from the transcript, seem to be, that the

assignee Weaver, sold and delivered some of the personal property belonging to the estate to Brooks, for the Blanchard Meat and Supply Company, and that he also agreed to convey the real property in question when the title to it was cleared. That an actual sale was not made seems to be proved by the answers of Brooks to certain questions propounded to him on cross examination. They can be found on page 40 of the printed transcript and are as follows:

Q. Would you have paid the $2,000, and taken a deed for the property at the time you say the purchase was made without having the tax sale against the property cleared up?

A. Yes, if we could have been protected by a good and sufficient bond.

Q. You wouldn't have been willing to pay it though without a bond?

A. No, because it would have been just like accepting the property with an incumbrance against it."

Doubtless both Weaver, as assignee, and Brooks, intended after the title to the property in controversy was cleared, to apply to the court for an order allowing it to be sold, but from the above questions and answers it cannot well be contended that an actual bona fide sale was made by the assignee on September 1, 1903, of the real estate, especially as no money was paid to bind the bargain. It will be noted that although the judgment removing the cloud caused by the sale of the property for taxes was finally determined and entered of record on November 9, 1905, and Weaver did not resign as assignee for more than a year after the entry of the judgment removing the cloud, still no application was ever made to the court for an order allowing the sale to be made, or for the confirmation thereof, if a sale had been previously made.

If we had no statutes regarding voluntary assignments, possibly the alleged sale by the assignee to Brooks would be upheld, but as this assignment is under the statutes of this Territory and as the important provisions of the act regulating sales, as above set out, have not been complied

with, we are of the opinion that the trial court very properly dissolved the temporary injunction and denied the relief asked for.

There being no error in the judgment of the court below, the same is affirmed; and it is so ordered.

Cooley and Mechem, J. J., did not hear the argument and took no part in this decision.

### SYLLABUS (BY THE COURT.)